UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMILLE TAYLOR,                                    Case No. 24-10739

　　　　Plaintiff,                                  F. Kay Behm
v.                                                 United States District Judge

SHANITA MOORE, *et al*,

　　　　Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT (ECF No. 11)**

## I.　　PROCEDURAL HISTORY

Plaintiff, Camille Taylor, brings this civil rights action against the City of

Detroit and two of its police officers, Shanita Moore and Michael Cardenas.  (ECF

No. 1).   Taylor brings an excessive force claim against the two individual officers

(Count I), a *Monell* claim against the City of Detroit, and state law claims of assault

and battery, gross negligence, and intentional infliction of emotional distress.  *Id*.

On April 10, 2025, Defendants filed their motion for summary judgment on all

claims in the complaint.  (ECF No. 11).  This matter is fully briefed.  (ECF Nos. 14,

15).  In her response, Taylor agreed to dismiss the City of Detroit and Defendant

Cardenas as well as all state law claims except assault and battery against

Defendant Moore.  (ECF No. 14, PageID.159) ("Plaintiff stipulates to the dismissal

of the City of Detroit and Defendant Cardenas as well as only the gross negligence claim/IIED claim against Defendant Moore.  Plaintiff continues with her excessive force claim[] against Defendant Moore as well as her claim[] … [of] state law assault and battery claims against Defendant Moore.")  Accordingly, the court will proceed to address only the excessive force and assault and battery claims against Moore.

For the reasons set forth below, the court **GRANTS** summary judgment in favor of Defendants and **DISMISSES** the complaint.

## II.    FACTUAL BACKGROUND

On May 29, 2021, Taylor apparently lost control of her vehicle and crashed into the pole in a handicap parking spot in the parking lot of Whole Foods in downtown Detroit.  Exhibit 1 (Cardenas bodycam) at 0:30-0:52.  Taylor explains that while she was turning into a parking space in the parking lot, her brakes failed and she hit a pole.  (ECF No. 14-1, Plaintiff's affidavit, ¶ 5).  Taylor called a tow truck to have her car towed to where she had recently had some repairs done.  *Id.* at ¶ 12.  According to Defendants Moore and Cardenas, they were on routine patrol of the area and saw Taylor's disabled car parked perpendicularly within the handicap parking spot and the sign knocked over.  The officers stopped

2

and approached Taylor to assess the situation.  Exhibit 1 (Cardenas bodycam) at

0:15 and Exhibit 2 (Moore bodycam) at 1:02.

The officers asked Taylor to produce her driver's license and proof of

insurance.  Exhibit 1 (Cardenas bodycam) at 4:45-4:53.  Taylor questioned the

officers, refused to provide her proof of insurance, and refused to talk to Officer

Cardenas who commanded her to get her license and proof of insurance.  *Id*. at

4:45 – 5:25.  Taylor was unable to provide any proof of insurance.  *Id*.; *see also*

ECF No. 14-1, ¶ 18.  Taylor provided her license and registration to the police

officers.  (ECF No. 14-1, ¶ 17).  Taylor indicates that she questioned the police

officer's involvement because no one at the scene had called the police.  (ECF No.

14-1, ¶¶ 16, 20).  According to Defendants, Taylor was in violation of Mich. Comp.

Laws § 257.328, which makes it a civil infraction to fail to provide proof of

insurance to police officers.  Defendants assert that there was also probable

cause to believe Taylor was in violation of Mich. Comp. Laws § 500.3102(2), which

makes it a misdemeanor to drive an uninsured automobile.  Officer Moore

instructed Taylor to stand by her vehicle while her information was processed.

Exhibit 2 (Moore bodycam) at 6:51-7:10.

Taylor informed the officers that the brakes had failed, causing her to crash

into the pole.  Exhibit 1 (Cardenas bodycam) 23:15-23:55.  As Cardenas explained,

Taylor's vehicle could not be driven because it was uninsured, and because its brakes were not functioning properly.  As a result, he arranged for the vehicle to be towed.  Exhibit 1 (Cardenas bodycam), 24:06-24:15 and 24:42.

Officer Cardenas provided the citations to Taylor, who argued with the officers, and indicated she did not want her car to be towed.  Exhibit 1 (Cardenas bodycam) at 23:10-24:30.  Officer Cardenas instructed Taylor to step away from the police vehicle.  *Id*. at 27:20.  Officer Moore again commanded Taylor to step away from the vehicle and stand by her vehicle Exhibit 1, (Cardenas bodycam) 30:35-30:45.  Moore instructed Taylor not to approach the car.  Exhibit 2 (Moore bodycam) at 34:19.

Taylor was informed that her continued refusal to obey police commands would constitute a felony.  Exhibit 1 (Cardenas bodycam) at 33:25.  At this point, Taylor refused to obey lawful police commands, and became verbally combative. Exhibit 1 (Cardenas bodycam) at 34:50.  According to Defendants, at this moment, there was probable cause to arrest Plaintiff for disorderly conduct, in violation of Mich. Comp. Laws § 750.167, and Detroit Ordinance 31-5-1, as well as for resisting and obstructing a police officer, Mich. Comp. Laws § 750.81d, and for driving an automobile without insurance, Mich. Comp. Laws § 500.3102(2).

Officer Cardenas informed Taylor that she was under arrest and ordered her to place her hands behind her back.  Exhibit 1 (Cardenas bodycam) at 34:50.  Taylor then exclaimed "No, you cannot arrest me!" refused to place her hands behind her back, yanked her arms away from the officers, and yelled at the officers to "let [her] go."  Exhibit 1 (Cardenas bodycam) 34:50-35:10.  Taylor repeatedly refused to allow the officers to place her in handcuffs.  *Id*.  Taylor's refusal to be handcuffed and verbal denials continued for over a minute.  *Id*. at 35:10-36:10.  Taylor claims that she only wanted to know why the officers were arresting her and she never resisted or "yanked away" from the officers.  (ECF No. 14-1, ¶¶ 27, 28).

Cardenas again informed Taylor she was being arrested for disorderly conduct.  Exhibit 1 (Cardenas bodycam) at 35:50.  While the officers attempted to arrest Taylor, she stated, "I'm peeing," which occurred before Moore drew her taser.  Exhibit 1 (Cardenas bodycam) at 35:24; Exhibit 2 (Moore bodycam) at 35:19.  Officer Moore then drew her taser and before the taser was ever deployed, Taylor exclaimed "what are you tasing me for?!"  Exhibit 2 (Moore bodycam) at 35:24-25.  While Taylor was facing away from Officer Moore and yelling at Officer Cardenas, Officer Moore discharged her taser.  Exhibit 1 (Cardenas bodycam) at 35:55 and Exhibit 2 (Moore bodycam) at 35:53.  According

to Defendants, the taser did not take effect and Taylor did not notice it had been discharged.  *Id*. *see also*, Exhibit 5 (Officer reports).  In her affidavit, Taylor says that the taser felt like a large needle going into her back and that she urinated after the taser was discharged.  (ECF No. 14-1, ¶¶ 31, 32).

Taylor was charged with disorderly conduct and driving without insurance. *See* Exhibit 6.  Taylor subsequently entered into a plea agreement, in which she admitted to the misdemeanor of driving with improper plates in violation of Mich. Comp. Laws § 257.256, and dismissal of the other two charges.  *Id*.  This lawsuit followed.

### III.   ANALYSIS

#### A.   <u>Standard of Review</u>

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the record contains "a videotape capturing the events in question," the court may not adopt a "version of the facts for purposes of ruling on a motion for summary judgment" that "blatantly contradict[s]" the asserted version of events such that "no reasonable jury could believe it."  *Raimey v. City of Niles, Ohio*, 77 F.4th 441, 447 (6th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  And the court must "nonetheless 'view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff.'" *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine

issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the

party opposing a motion for summary judgment must make an affirmative

showing with proper evidence and must "designate specific facts in affidavits,

depositions, or other factual material showing 'evidence on which the jury could

reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir.

2004).  To fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S.

at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-

moving party.  *Anderson*, 477 U.S. at 248, 251.

  In the use-of-force context, "once the relevant set of facts is determined

and all reasonable inferences are drawn in favor of the plaintiffs, to the extent

supported by the record, the question of whether the [officers'] actions were

objectively unreasonable is 'a pure question of law.'" *Chappell v. City of*

*Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. at

381 n.8; and citing *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008)).  But "*if*

there is some evidence – more than a mere scintilla of evidence – that [the

plaintiff], through his conduct, judged from the perspective of reasonable officers

on the scene, did not give the officers probable cause to believe that he posed a serious threat of harm, a genuine fact dispute is created." *Chappell*, 585 F.3d at 909 (emphasis in original).

      B.    <u>Fourth Amendment Excessive Force</u>

          1.   *Legal standards*

Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts undertake a two-pronged inquiry to determine an officer's entitlement to qualified immunity in the excessive force context, examining both: "(1) whether the officer violated the plaintiff's constitutional rights under the Fourth Amendment; and (2) whether that constitutional right was clearly established at the time of the incident." *Estate of Hill ex rel. Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (citation omitted). The two prongs can be addressed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity shields an officer's actions if either inquiry is answered in the negative. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

Although Taylor bears the burden of demonstrating that Moore is not entitled to qualified immunity, the court views all facts in the light most favorable to Taylor. *Foster v. Patrick*, 806 F.3d 883, 886 (6th Cir. 2015) (citation omitted). If there is video evidence, the court takes the facts "in the light depicted by the videotape." *Leftwich v. Driscoll*, 2023 WL 3563207, at *2 (6th Cir. May 19, 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). However, if the video evidence "can be interpreted in multiple ways or if [the] videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Id*. (quoting *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017)).

The Fourth Amendment guarantees citizens the right to be free from unreasonable seizures, and a court must look to the totality of the circumstances to determine whether an officer used excessive force. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "To determine if an officer's use of force violates the Fourth Amendment, courts apply an objective reasonableness standard, considering an officer's actions 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Lunneen v. Village of Berrien Springs, Michigan*, 2023 WL 6162876, at *4 (6th Cir. Sept. 21, 2023) (quoting *Graham v. Connor*, 490 U.S. at 396-97). As explained in *Palma v. Johns*, 27 F.4th 419, 428 (6th Cir. 2022), when considering the "totality of the circumstances," the

Supreme Court has articulated three factors as a starting point: "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Estate of Hill v. Miracle*, 853 F.3d 306, 313 (6th Cir. 2017) (quoting *Graham*, 490 U.S. at 396).  This list is not, however, exhaustive. *Palma*, 27 F.4th at 428-429 (citing *Roell v. Hamilton Cnty.*, 870 F.3d 471, 480 (6th Cir. 2017)); *see also Zuress v. City of Newark, OH*, 815 F. App'x 1, 6 (6th Cir. 2020) ("The *Graham* factors are not exhaustive.").  The reasonableness inquiry "is an objective one" that does not account for an officer's "evil" or "good" intentions and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Leftwich*, at *2 (quoting *Graham v. Connor*, 490 U.S. at 396-97 (citations omitted)).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Under long-standing case law in this circuit, "there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to

11

himself or others."  *Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009) (citing

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) ("The general consensus among our

cases is that officers cannot use force ... on a detainee who has been subdued"

and "is not resisting arrest."); *Moore v. Oakland Cnty., Michigan*, 126 F.4th 1163,

1168 (6th Cir. 2025) ("With respect to the use of reasonable force, officers may

not subdue a 'non-violent, non-resisting, or only passively resisting suspect' with

physical force such as tasing, pepper-spraying, or beating them.") (quoting *Smith

v. City of Troy*, 874 F.3d 938, 945 (6th Cir. 2017) (per curiam)).

Additionally, as explained in *Hermiz v. Budzynowski*, 2017 WL 2546793, *7

(E.D. Mich. June 13, 2017) (Lawson, J.), the Sixth Circuit has long "held that mere

noncompliance is not active resistance."  *Woodcock v. City of Bowling Green*, 2017

WL 633385, at *4 (6th Cir. Feb. 16, 2017) (citing *Goodwin v. City of Painesville*, 781

F.3d 314, 323-24 (6th Cir. 2015) (holding that refusal to comply with an officer's

command to step outside the apartment was not active resistance); *Eldridge v.

City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013) ("If there is a common thread

to be found in our case law on this issue, it is that noncompliance alone does not

indicate active resistance; there must be something more.")).  The court of

appeals has "long distinguished active resistance by arrestees from passive

resistance."  *Jackson v. Washtenaw County*, 678 F. App'x 302, 306 (6th Cir. 2017)

(citing *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015)).  "The

former can be characterized by physical force, a show of force, or verbal hostility

coupled with failure to comply with police orders."  *Jackson*, 678 F. App'x at 306

(citing *Goodwin*, 781 F.3d at 323; *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir.

2015)).  "The latter is generally shown by the lack of physical resistance or verbal

antagonism."  *Jackson*, 678 F. App'x at 306 (citing *Austin v. Redford Twp. Police

Dep't*, 690 F.3d 490, 498 (6th Cir. 2012); *Eldridge*, 533 F. App'x at 535).  Indeed, an

officer may use force to restrain someone who actively resists by physically

struggling with police, threatening them, resisting handcuffs, or acting erratically.

*Moore*, 126 F.4th at 1168 (citing *Browning v. Edmonson County*, 18 F.4th 516, 527

(6th Cir. 2021)).  Moreover, if an arrestee "kick[s], flail[s], and wriggl[es] away"

from an arresting officer's grasp, *see Roell v. Hamilton County*, 870 F.3d 471, 482–

83 (6th Cir. 2017), or "repeatedly pull[s] his left arm away" from an officer's

handcuffs, *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022), officers may

use a taser to restrain him.  *Moore*, 126 F.4th at 1168.

        2.    *Analysis*

      As to the first *Graham* factor – the seriousness of the crime – disorderly

conduct is not particularly dangerous.  *Thacker v. Lawrence Cnty.*, 182 F. App'x

464, 472 (6th Cir. 2006) ("The crime of disorderly conduct is not a violent or

serious crime, and this fact weighs in favor of using less force in arresting [the

plaintiff]").  However merely because an arrestee has not committed a serious

crimes does not necessarily mean that officers are precluded from using force.

*Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012) (recognizing

numerous cases holding that an officer's use of a taser against a plaintiff who is

"actively resisting arrest by physically struggling with, threatening, or disobeying

officers" is not a violation of the plaintiff's clearly established Fourth Amendment

rights, even if the plaintiff is suspected of committing only a misdemeanor).

Thus, while seriousness of the crime may not be a significant factor in this case

and weighs in favor of using less force in arresting someone for such conduct, *see*

*Muldrew v. Horlocker*, 2010 WL 2474792, at *6 (E.D. Mich. June 14, 2010)

(collecting cases), the court must still evaluate the other factors.  *See Foos v. City*

*of Delaware*, 2010 WL 3489384, at *6 (S.D. Ohio Aug. 31, 2010), aff'd, 492 F.

App'x 582 (6th Cir. 2012) ("Even assuming that the seriousness of the crime was

not a factor here, this Court must evaluate the other factors.").

As to the second *Graham* factor – whether the suspect poses an immediate

threat to the safety of the officers or others – the video evidence shows that

Taylor may have become somewhat of a threat when she began to struggle with

the officers, but Defendants do not argue that Taylor posed a significant threat to

14

them or other members of the public.  Accordingly, this factor weighs in favor of using less force to effectuate the arrest.

As both parties concede, the heart of the dispute comes down to the third *Graham* factor – whether Taylor was actively resisting arrest or attempting to evade arrest by flight.  Notably, the present circumstance is similar to the situation in *Thacker*, where the officers "were attempting the arrest of an upset, loud, and swearing individual who refused to calm down."  182 F. App'x at 472. Under these circumstances presented here, it was not excessive force to reach for Taylor and try to place her in handcuffs.  *Id*.  Despite repeated commands to turn around and allow herself to be handcuffed, Taylor refused to put her hands behind her back.  Further, she was visibly agitated and made a number of loud statements that she would not be arrested.  Taylor also repeatedly pulled her arms away from the officers who were trying to place her in handcuffs.  Under similar circumstances, the use of a taser has been found not to be excessive force. *See Moore*, 126 F.4th at 1168.  As this court has noted previously, once the line into active resistance is crossed, Sixth Circuit cases "firmly establish that it is not excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest."  *Grady v. Cratsenburg*, 769 F. Supp. 3d 609, 663 (E.D. Mich. 2025) (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015);

*see id.* at 643 ("[P]olice officers can tase someone who resists lawful arrest and refuses to move his hands so the police can handcuff him.") (citing *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) (collecting cases)).

Taylor maintains, however, that she was never resisting arrest, but her affidavit is belied by the video evidence.[1]  More significantly, Taylor says she had her back to Moore (having thus obeyed the "turn around" command at this point) when Moore discharged her taser.  Taylor contends that a jury could find that Moore's actions were thus not objectively reasonable.  While Taylor did begin to turn around, as evidenced on the video (Exhibit 1, 35:56-57), she still refused to place her hands behind her back for handcuffing, despite having been warned that she would be tased.  *Id*.; *see id*. at 35:30-31.  Further, just after the taser was discharged, Taylor turned to face forward, (Exhibit 1 at 35:59), despite continuing commands to turn around.  *Id*. at 35:59-36:04.[2]  Taylor finally turned her back to officers and allowed herself to be handcuffed.  *Id*. at 36:05-36:16; 36:20-37:03.

---

[1] When the record contains "a videotape capturing the events in question," the court may not adopt a "version of the facts for purposes of ruling on a motion for summary judgment" that "blatantly contradict[s]" the asserted version of events such that "no reasonable jury could believe it."  *Raimey v. City of Niles, Ohio*, 77 F.4th 441, 447 (6th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[2] Notably, the taser does not appear to have caused Taylor to be unable to move or control herself nor does Taylor make any such claim.

The court's "inquiry into the reasonableness of police force requires analyzing the 'totality of the circumstances.'"  *Barnes v. Felix*, 145 S. Ct. 1353, 1358 (2025) (quoting *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 n.* (2017)).  This "demands 'careful attention to the facts and circumstances' relating to the incident, as then known to the officer," *id*. (quoting *Graham*, 490 U.S. at 396), and requires a "fact-dependent and context-sensitive approach" in assessing the objective reasonableness of a police use of force.  *Id*. at 1359.  To that end, "the history of the interaction ... may inform the reasonableness of the use of the force."  *Id*. at 1358; *see also Sterusky v. Cooper*, 2025 WL 2058797, at *4 (6th Cir. July 23, 2025).  Here, the officers spent several minutes struggling with Taylor in their efforts to get her to comply with police commands so that she could be handcuffed.  She repeatedly refused to place her hands behind her back and continuously pulled away from officers while they tried to physically force her compliance with their hands.  Under the totality of the circumstances of the entire encounter, the video evidence objectively establishes that Taylor actively resisted the attempts to handcuff her, thus justifying the use of the taser.  *See Moore*, 126 F.4th at 1168 (Where arrestee "kick[s], flail[s], and wriggl[es] away" from an arresting officer's grasp, *see Roell v. Hamilton County*, 870 F.3d 471, 482–83 (6th Cir. 2017), or "repeatedly pull[s] his left arm away" from an officer's

handcuffs, *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022), officers may use a taser to restrain him.).

Taylor's reliance on *Brown v. Chapman*, 814 F.3d 447 (6th Cir. 2016) does not change this result.  There, the court concluded that the severity of the crimes at issue – driving without headlights, refusing to provide identification and driving under the influence of drugs – were not severe enough to warrant the use of the taser.  *Id*. at 459.  The court also found questions of fact regarding whether the plaintiff posed an immediate threat and whether he was resisting arrest.  *Id.* at 460-461.  As explained in *Bell v. City of Southfield*, however, there was no video evidence offered in *Brown v. Chapman* so the court was required to adopt the plaintiff's explanations that he never resisted arrest, never threatened the officers, and he ran away from the officers to avoid getting hit.  *Bell*, 37 F.4th at 368.  In *Bell*, in contrast, there was "indisputable video evidence" showing that Bell actively resisted arrest by repeatedly pulling his arm away from the officers to avoid the handcuffs, even after being warned that he would be tased if he did not comply.  Similarly here, as discussed in detail above, the "indisputable video evidence" shows that Taylor resisted by repeatedly pulling her arms away from the officers who were trying to handcuff her, along with her continuous verbal hostility, even after she was warned that she would be tased.  *See Hagans v.*

*Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012) (finding active resistance, and thus no constitutional violation, when officers tased a plaintiff who refused to allow officers to secure his arms behind his back); *Jackson*, 678 F. App'x at 306 ("[Active resistance] can be characterized by physical force, a show of force, or verbal hostility coupled with failure to comply with police orders.").

Taylor also argues that it was clearly established as of May 21, 2021 that tasering a non-threatening suspect who was not actively resisting constituted excessive force. While that is an accurate statement of the law, here, the court has found, based on indisputable video evidence, that Taylor was actively resisting arrest when she was tased and thus, Officer Moore's actions were objectively reasonable. And, it was clearly established as of May 21, 2021, as Taylor acknowledges, that a suspect actively resisting being handcuffed during an arrest can be tased. *See e.g.*, *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509–11 (6th Cir. 2012) (finding that, as of 2007, a suspect who refused to be handcuffed and actively resisted arrest did not have a clearly established right not to be tasered); *Rudlaff v. Gillispie*, 791 F.3d 638, 643 (6th Cir. 2015) ("[P]olice officers can tase someone who resists lawful arrest and refuses to move his hands so the police can handcuff him."). Accordingly, Moore is entitled to qualified immunity.

C.      Assault and Battery

"Under Michigan law an assault is 'an attempt to commit a battery or an

unlawful act which places another in reasonable apprehension of receiving an

immediate battery.'"  *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (citing

*People v. Nickens*, 470 Mich. 622, 628 (Mich. 2004)).  "A battery is 'an intentional,

unconsented and harmful or offensive touching of the person of another, or of

something closely connected with the person.'"  *Id*. (quoting *Nickens*, 470 Mich. at

628).  An officer does not commit an assault or battery when using reasonable

force to effectuate an arrest, although the officer may be liable for assault and

battery if unjustifiable force is used.  *Bennett v. Krakowski*, 671 F.3d 553, 560-61

(6th Cir. 2011) (citations omitted); *VanVorous v. Burmeister*, 262 Mich. App. 467,

480 (2004) (quoting *Brewer v. Perrin*, 132 Mich. App. 520, 528 (1984)) ("It is well-

settled in our state's jurisprudence that 'a police officer may use reasonable force

when making an arrest.'").

"Michigan state law imposes a subjective test for governmental immunity

for intentional torts, based on the officials' state of mind, in contrast to the

objective test for federal qualified immunity.  Michigan governmental immunity

'protects a defendant's honest belief and good-faith conduct with the cloak of

immunity while exposing to liability a defendant who acts with malicious intent.'"

*Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015) (quoting *Odom v. Wayne Cnty.*, 482 Mich. 459 (2008)) (finding that district court improperly applied an objective reasonableness test in analyzing plaintiff's assault and battery claim).  "That malicious intent is defined as 'conduct or a failure to act that was intended to harm the plaintiff ... [or] that shows such indifference to whether harm will result as to be equal to a willingness that harm will result.'"  *Id.* (quoting *Odom*, 482 Mich. at 475.  In order for Moore to be entitled to governmental immunity for an intentional tort, she must establish that she was "acting in the course of [her] employment and at least reasonably believed [she] was acting within the scope of [her] authority, that [her] actions were discretionary in nature, and that [she] acted in good faith."  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) (citing *Odom v. Wayne Cnty.*, 482 Mich. 459 (2008), which defined good faith as "without malice."); *see also Malory v. Whiting*, 489 F. App'x 78, 86 (6th Cir. 2012) ("The question of an officer's good faith under Michigan law overlaps considerably, if not entirely, with [the] analysis of whether the officer's actions were objectively reasonable under the circumstances.").

As explained in detail above, there is no question of fact regarding whether the force used by Moore was objectively reasonable.  Thus, summary judgment on Taylor's assault and battery claims is also granted because the assault and

battery claim, which arises from the same facts and circumstances, is similarly precluded.  *See Estate of Hill v. Miracle*, 853 F.3d 306, 318 (6th Cir. 2017) (concluding that the defendant is entitled to governmental immunity on the plaintiff's state-law claim of assault and battery because the record reflected that the defendant "acted in an objectively reasonable manner with the minimum force necessary to bring [the plaintiff] under control"); *Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 43 (6th Cir. 2005) (concluding that, because "the officers' use of force ... was reasonable and justified ... the assault and battery claim cannot stand")).

## IV.    CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendants' motion for summary judgment and **DISMISSES** Plaintiff's complaint.  This is a final order and closes the case.

**SO ORDERED**.

Date: August 28, 2025                          s/F. Kay Behm
                                                                F. Kay Behm
                                                                United States District Judge